UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| SHRIMP COMMITTEE OF THE VIETNAM ASSOCIATION OF SEAFOOD EXPORTERS AND PRODUCERS,<br><br>            Plaintiff,<br><br>            v.<br><br>UNITED STATES,<br><br>            Defendant. | Court No. 25-00032 |

## COMPLAINT

Plaintiff Shrimp Committee of the Vietnam Association of Seafood Exporters and Producers ("Plaintiff"), by and through its attorneys, alleges and states as follows:

1. Plaintiff seeks judicial review of the final affirmative injury determinations of the U.S. International Trade Commission ("Commission") in the investigations of Frozen Warmwater Shrimp from Ecuador, India, Indonesia, and Vietnam. *Frozen Warmwater Shrimp From Ecuador, India, Indonesia, and Vietnam*, 89 Fed. Reg. 102,163 (Dec. 17, 2024); *see also Frozen Warmwater Shrimp from Ecuador, India, Indonesia, and Vietnam*, Inv. Nos. 701-TA-699-700 and 702 and 731-TA-1660 (Final), USITC Pub. 5566 (Dec. 2024) ("*Frozen Warmwater Shrimp*, USITC Pub. 5566").

## JURISDICTION

2. Plaintiff brings this action pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II) and (a)(2)(B)(i) to review final affirmative determinations made by the Commission under 19 U.S.C. §§ 1671d(b) and 1673d(b). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

**STANDING**

3.Plaintiff meets the definition of an "interested party" under 19 U.S.C. § 1677(9)(A) as a trade association of which a majority of its members are producers or exporters of subject merchandise.

4.Plaintiff participated in the underlying investigations giving rise to this action and, therefore, constitutes "a party to the proceeding in connection with which the matter arose" under 19 U.S.C. § 1516a(a)(2)(A).

5.As an interested party that participated as a party in the underlying proceeding, Plaintiff has standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

**TIMELINESS OF THE ACTION**

6.The Commission published notice of final determinations on December 17, 2024. *Frozen Warmwater Shrimp From Ecuador, India, Indonesia, and Vietnam*, 89 Fed. Reg. 102,163 (Dec. 17, 2024). The U.S. Department of Commerce ("Commerce") published notice of the antidumping duty order on Frozen Warmwater Shrimp from Indonesia and the countervailing duty orders on Frozen Warmwater Shrimp from Ecuador, India, and the Socialist Republic of Vietnam on December 26, 2024. *Frozen Warmwater Shrimp From Indonesia: Antidumping Duty Order; Frozen Warmwater Shrimp From Ecuador, India, and the Socialist Republic of Vietnam: Countervailing Duty Orders*, 89 Fed. Reg. 104,982 (Dec. 26, 2024).

7.Plaintiff filed its Summons for this action on January 24, 2024. Plaintiff therefore commenced this action within the time limit specified in 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and 28 U.S.C. § 2636(c).

8. Plaintiff timely filed this Complaint within 30 days of the filing of the Summons in this action, as required by the time limit set forth in 19 U.S.C. § 1516a(a)(2)(A) and Court Rule 3(a)(2).

## PROCEDURAL HISTORY

9. On October 25, 2023, the American Shrimp Processors Association filed petitions with the Commission and Commerce, alleging that an industry in the United States was materially injured or threatened with material injury by reason of subsidized imports of frozen warmwater shrimp from Ecuador, India, Indonesia, and Vietnam and imports of frozen warmwater shrimp from Ecuador and Indonesia sold at less than fair value ("subject imports"). Accordingly, the Commission instituted countervailing duty investigations 701-TA-699-702 and antidumping duty investigations 731-TA-1659-1660. *Frozen Warmwater Shrimp From Ecuador, India, Indonesia, and Vietnam; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations*, 88 Fed. Reg. 74,511 (Oct. 31, 2023).

10. On December 14, 2023, the Commission published notice of preliminary determinations that there was a reasonable indication that an industry in the United States was materially injured by reason of subject imports. *Frozen Warmwater Shrimp From Ecuador, India, Indonesia, and Vietnam*, 88 Fed. Reg. 86,677 (Dec. 14, 2023).

11. On January 26, 2024, the Commission released draft questionnaires for interested parties to submit comments on revisions to collect data relevant to these investigations. Plaintiff and other parties submitted comments on March 4, 2024.

12. In turn, Commerce conducted countervailing duty investigations with respect to all four countries and antidumping duty investigations with respect to Ecuador and Indonesia. Following preliminary affirmative determinations published on May 30, 2024, Commerce

published notices of final affirmative determinations that subject imports from Indonesia were sold in the United States at less than fair value and subject imports from Ecuador, India, and Vietnam were subsidized by the Governments of Ecuador, India, and Vietnam, respectively. *Frozen Warmwater Shrimp From Indonesia: Final Affirmative Determination of Sales at Less-Than-Fair Value*, 89 Fed. Reg. 85,498 (Oct. 28, 2024); *Frozen Warmwater Shrimp From Ecuador: Final Affirmative Countervailing Duty Determination*, 89 Fed. Reg. 85,506 (Oct. 28, 2024); *Frozen Warmwater Shrimp From India: Final Affirmative Countervailing Duty Determination*, 88 Fed. Reg. 85,502 (Oct. 28, 2024); *Frozen Warmwater Shrimp From the Socialist Republic of Vietnam: Final Affirmative Countervailing Duty Determination*, 88 Fed. Reg. 85,500 (Oct. 28. 2024). Commerce published notices of a negative final countervailing duty determination with respect to subject imports from Indonesia and a negative final determination of sales at less than fair value with respect to subject imports from Ecuador. *Frozen Warmwater Shrimp From Indonesia: Final Negative Countervailing Duty Determination*, 89 Fed. Reg. 85,512 (Oct. 28, 2024); *Frozen Warmwater Shrimp From Ecuador: Final Negative Determination of Sales at Less Than Fair Value*, 89 Fed. Reg. 85,508 (Oct. 28, 2024). Accordingly, the Commission terminated those investigations. *Frozen Warmwater Shrimp From Indonesia and Ecuador; Termination of Investigations*, 89 Fed. Reg. 88,061 (Nov. 6, 2024).

13. On June 26, 2024, the Commission published notice instituting its final investigations. *Frozen Warmwater Shrimp From Ecuador, India, Indonesia, and Vietnam; Scheduling of the Final Phase of Countervailing Duty and Antidumping Duty Investigations*, 89 Fed. Reg. 53444 (June 26, 2024). The schedule was subsequently amended to accommodate Commerce's tolling of statutory deadlines in its investigations. *Frozen Warmwater Shrimp From*

4

*Ecuador, India, Indonesia, and Vietnam; Revised Schedule for the Subject Investigations*, 89 Fed. Reg. 80,604 (Oct. 3, 2024).

14. Along with other interested parties, Plaintiff submitted a prehearing brief on October 15, 2024, gave testimony at the Commission's October 22, 2024 hearing, filed a posthearing brief on October 29, 2024, and filed final comments on November 14, 2024.

15. On December 17, 2024, the Commission published notice of affirmative determinations that a domestic industry was materially injured by reason of subject imports. *Frozen Warmwater Shrimp From Ecuador, India, Indonesia, and Vietnam*, 89 Fed. Reg. 102,163 (Dec. 17, 2024). The Commission's written views and final staff report, summarizing the data collected in the investigations, were published in December 2024. *See generally Frozen Warmwater Shrimp*, USITC Pub. 5566.

## SUMMARY OF THE FINAL DETERMINATIONS

16. In determining whether the domestic industry was materially injured by reason of subject imports, the Commission considered the volume effects, price effects, and impact of subject imports from Ecuador, India, Indonesia, and Vietnam. Finding a reasonable overlap of competition between and among imports from each subject country and domestically produced warmwater shrimp, the Commission cumulated subject imports for purposes of its material injury analysis. *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 36.

17. With respect to volume effects, the volume of cumulated subject imports declined from 2021 to 2023 but was higher between the interim periods (January-March 2023 and January-March 2024). *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 53. Cumulated subject imports as a share of apparent U.S. consumption increased from 2021 to 2023 and between in interim 2024 and interim 2023. *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 53. The Commission also

considered the ratio of cumulated subject imports to domestic production. *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 53. Based on this record, the Commission found that the volume of cumulated subject imports was significant in absolute terms and relative to production and consumption in the United States. *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 54.

18. With respect to price effects, the Commission found that there was "at least a moderate degree of substitutability" between cumulated subject imports and the domestic like product and that "price is an important factor in purchasing decisions, among other important factors." *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 54 (emphasis added). The Commission found underselling (65.9 percent) and overselling (34.1 percent) by cumulated subject imports. *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 55. The Commission reported anecdotal evidence of marketing campaigns (news articles and testimony regarding imported product being offered at regional festivals in the South), suggesting that "U.S. consumers are largely unaware of whether they are buying domestically produced wild-caught shrimp or imported farm-raised shrimp, and thus are not in a position to offer a premium for wild-caught shrimp." *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 61.

19. Based on these observations, the Commission concluded that "cumulated subject imports significantly undersold the domestic like product during the {period of investigation ("POI")}. The underselling led to significant lost sales by the domestic industry and a shift in market share from the domestic industry to cumulated subject imports between 2021 and 2023." *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 58. Further, "subject imports gained \*\*\* percentage points of market share between 2021 and 2023, partially at the expense of the domestic industry, which lost 0.8 percentage points of market share to subject imports over the period. The market share loss was equivalent to over 10 percent of the domestic industry's 7.6 percent market

6

share in 2021." *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 58 (asterisks indicating business proprietary information that was redacted from the public version of the final determinations).

20.     The Commission also found that prices generally declined over the POI, as apparent U.S. consumption declined, which the Commission claimed evidenced price depression. *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 64-66. The Commission reported that the domestic industry's ratio of cost of goods sold ("COGS") to net sales declined over the POI but made no findings regarding price suppression. *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 65.

21.     The Commission did not agree with respondents' arguments regarding the lack of negative price effects by cumulated subject imports. In particular, the Commission found that competition between cumulated subject imports and the domestic product was not attenuated "by virtue of almost all subject imports being farm-raised and almost all domestically produced frozen warmwater shrimp being wild-caught." *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 58. The Commission acknowledged that "some responding purchasers and importers reported that wild-caught and farm-raised shrimp have limited interchangeability, including a majority of responding U.S. importers reporting that they are never interchangeable, while a majority of responding U.S. processors reported that farm-raised and wild-caught warmwater shrimp are always interchangeable." *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 58-59. The Commission nonetheless concluded that

> the record indicates that frozen warmwater shrimp is frequently marketed and sold in ways that downplay the distinctions between domestic wild-caught shrimp and imported farm-raised shrimp, which inhibits purchasing decisions on that basis and elevates distinctions in prices. That retailers and consumers often do not know whether they have purchased wild-caught shrimp or farm-raised shrimp, and simply request shrimp without regard to its origin, indicates that there is interchangeability between the two. As previously discussed, a majority of responding purchasers reported that they and their customers never or only sometimes make purchasing decision based on the country of origin.

*Frozen Warmwater Shrimp*, USITC Pub. 5566 at 59 (footnotes omitted).

7

22. With respect to the impact of cumulated subject imports on the domestic industry, the Commission evaluated factors relating to output, employment, and financial performance and examined the domestic industry's performance separately for U.S. processors and U.S. fishermen. *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 70. In summary, the Commission found that

> the significant volume of cumulated subject imports significantly undersold the domestic like product during the POI. This caused the domestic industry to lose sales and market share to subject imports, and significantly depressed the U.S. processors' and fishermen's prices for fresh and frozen warmwater shrimp. The U.S. processors' loss of sales and market share to subject imports led to declines in their production, capacity utilization, and U.S. shipments. While the processors' financial performance was weak in 2021, its lower output and depressed prices as a result of subject import underselling caused a sharp decline in the industry's financial performance during the POI, including operating losses in 2022 and 2023. U.S. fishermen also experienced declining financial performance, as U.S. processors, faced with loss of market share and lower prices due to subject imports, lowered the price they would pay for fresh shrimp, resulting in lower prices for fishermen and reducing their incentive to shrimp, which in turn resulted in fewer fishing days, fewer boats in operation, fewer {production-related workers}, and lower output.

*Frozen Warmwater Shrimp*, USITC Pub. 5566 at 76-77.

23. The Commission was not persuaded that the domestic industry's performance was caused by factors other than cumulated subject imports. Respondents presented evidence of other factors, including biological limits on the volume of wild-caught shrimp that U.S. fishermen could harvest and the lack of correlation between the volume of subject imports and domestic supply. *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 77-78. Despite historical data on the record to the contrary, the Commission found that the quantity of harvested warmwater shrimp and frozen shrimp production was dictated by the financial incentives of the U.S. fishermen. *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 79. The Commission also disagreed with the respondents that declining demand caused any injury to the domestic industry, citing increasing volumes of cumulated subject imports (despite evidence that import volumes actually declined over most of the POI), the shift in market share from U.S. processors to cumulated subject imports, and U.S.

processors' ability to supply additional volumes of frozen shrimp. *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 81.

## STATEMENT OF CLAIMS

24. Paragraphs 1 through 23 are incorporated by reference.

25. In the following respects and for other reasons apparent from the record, the Commission's determinations are not supported by substantial evidence and is otherwise not in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i).

## COUNT ONE

26. Paragraphs 1 through 25 are incorporated by reference.

27. The statute requires the Commission to determine whether "there has been <u>significant</u> price underselling by the imported merchandise as compared with the price of domestic like products of the United States." 19 U.S.C. § 1677(7)(C)(ii)(I) (emphasis added).

28. The Commission found that underselling by cumulated subject imports was significant because it led to "a shift in market share from the domestic industry to cumulated subject imports between 2021 and 2023." *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 58. The Commission's findings were improper for two reasons. First, the Commission considered changes in market share for fresh and frozen shrimp, even though domestic production of frozen shrimp was more comparable to cumulated subject imports of frozen shrimp. *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 58 (citing Table IV-11); *id.* at IV-7 (Table IV-2) (reporting negligible quantities of imported raw shrimp). Second, the Commission failed to consider market share over the full POI, including interim 2024. In proper context, U.S. processors of frozen shrimp lost only 0.3 (nearly zero) percentage points of market share over the full POI (2021 to interim 2024). *Frozen Warmwater Shrimp*, USITC Pub. 5566 at C-3 (Table C-1). In other words, U.S. processors

maintained market share despite declining prices and declining apparent U.S. consumption. *Frozen Warmwater Shrimp*, USITC Pub. 5566 at C-3 (Table C-1).

29. While the statute may not define a numerical threshold for "significant" underselling, the term must be given meaning. The U.S. Supreme Court has cautioned to "construe statutes, where possible, so as to avoid rendering superfluous any parts thereof." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991). The Commission's finding that underselling was "significant" when U.S. processors lost only 0.3 percentage points of market share is inconsistent with the plain language of the statute and renders the statutory term meaningless.

30. The Commission also failed to explain adequately why underselling was significant when there was such a small shift in market share. *See NMB Singapore Ltd. v. United States*, 557 F.3d 1316, 1319-20 (Fed. Cir. 2009) ("While {an agency's} explanations do not have to be perfect, the path of {the agency's} decision must be reasonably discernable."); *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962) (requiring a "'rational connection between the facts found and the choice made.'")).

31. Therefore, the Commission's price analysis was unsupported by substantial evidence and otherwise not in accordance with law.

## COUNT TWO

32. Paragraphs 1 through 31 are incorporated by reference.

33. The Commission provided no reasoned basis for its conclusions regarding the interchangeability between frozen shrimp that is farm-raised (which represented nearly all cumulated subject imports) and wild-caught (which represented nearly all domestic production), as evidence of the degree of competition between subject imports and domestic production and the

consequent effect on prices. The Commission ignored questionnaire data and instead relied on anecdotal evidence of interchangeability. *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 49, 59. According to the Commission, "frozen warmwater shrimp is frequently marketed and sold in ways that downplay the distinctions between domestic wild-caught shrimp and imported farm-raised shrimp, which inhibits purchasing decisions on that basis and elevates distinctions in prices." *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 59. The Commission cited the domestic industry's hearing testimony, photographs of one package of frozen shrimp, and one website to support its conclusions. *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 59; *see also id.* at 49. To the contrary, the questionnaire data and a major retailer's testimony (Costco, which the Commission did not acknowledge in its final determinations) clearly established that there is separate and distinct demand for farm-raised and wild-caught shrimp.

34. Based on the record as a whole, the Commission erred in finding no attenuated competition between farm-raised cumulated subject imports and wild-caught domestic product that severed the causal link between cumulated subject imports and the price for the domestic product. The statute requires the Commission to determine whether the domestic industry is "materially injured or threatened with material injury by reason of" subject imports but does not define the phrase "by reason of." *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 38; 19 U.S.C. §§ 1671d(b), 1673d(b)). The Commission's "evaluation under the 'by reason of' standard must ensure that subject imports are more than a minimal or tangential cause of injury and that there is a sufficient causal, not merely a temporal, nexus between subject imports and material injury." *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 38 n.116 (citing *Nippon Steel Corp. v. U.S. Int'l Trade Com'n*, 345 F.3d 1379, 1384 (Fed. Cir. 2003)); *Mittal Steel Point Lisas Ltd. v. United States*, 542 F.3d 867, 873 (Fed. Cir. 2008) (quoting *Gerald Metals, Inc. v. United States*, 132 F.3d 716,

11

722 (Fed. Cir. 1997) ("{T}his court requires evidence in the record 'to show that the harm occurred 'by reason of' the {less than fair value} imports, not by reason of a minimal or tangential contribution to material harm caused by {less than fair value} goods'")). Furthermore, "{t}he legislative history explains that the Commission must examine factors other than subject imports to ensure that it is not attributing injury from other factors to the subject imports, thereby inflating an otherwise tangential cause of injury into one that satisfies the statutory material injury threshold." *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 39.

35. The Commission's failure to acknowledge attenuated competition was arbitrary and an abuse of discretion for failure to follow the statute and past practice. *See, e.g., SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001). The Commission's determination also lacks substantial evidence that there was material injury to the domestic industry "by reason" of cumulated subject imports when competition with subject imports was attenuated.

36. For these reasons, the Commission's price analysis was unsupported by substantial evidence and otherwise not in accordance with law.

## COUNT THREE

37. Paragraphs 1 through 36 are incorporated by reference.

38. Collection of relevant data through questionnaires to industry participants is essential to the development of the factual record on which the Commission's final determinations are based. In these investigations, the Commission failed to adopt certain comments on draft questionnaires, proposed by respondents. For example, Plaintiff proposed that the Commission provide additional examples of factors other than price that are significant to purchasing decisions between subject imports and the domestic product. The Commission failed to adopt this revision to the U.S. purchasers' questionnaire, as well as other comments by other respondents. An

incomplete factual record renders the Commission's final determinations unsupported by substantial evidence.

39. Additionally, in accordance with the statute and the legislative history, as explained above in Count Two, the Commission must make a determination that a domestic industry is materially injury "by reason" of subject imports. Attribution of other causal factors that explain purchases of subject imports, by failing to collect the data necessary to make that determination, is not in accordance with law.

## COUNT FOUR

40. Paragraphs 1 through 39 are incorporated by reference.

41. The Commission erred in its conclusion that "cumulated subject imports had a significant adverse impact on the domestic industry." *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 90. The Commission's flawed findings about underselling formed the basis of this conclusion about impact. *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 76 ("{W}e find that the significant volume of cumulated subject imports significantly undersold the domestic like product during the POI. This caused the domestic industry to lose sales and market share to subject imports . . . .").

42. As discussed above, the Commission erred in finding that cumulated subject import underselling was "significant." Accordingly, the Commission's finding that cumulated subject imports had a "significant adverse impact on the domestic industry" is also inconsistent with the plain meaning of the statute and unsupported by the record evidence. The Commission's determination renders the term "significant" superfluous and therefore is unlawful. *See Astoria Fed. Sav. & Loan Ass'n*, 501 U.S. at 112.

13

43. For the foregoing reasons, the Commission's impact analysis was unsupported by substantial evidence and otherwise not in accordance with law.

## COUNT FIVE

44. Paragraphs 1 through 43 are incorporated by reference.

45. To reach an affirmative determination, the statute requires the Commission to determine that a domestic industry is materially injured or threatened with material injury by reason of subject imports. 19 U.S.C. §§ 1671d(b), 1673d(b). The errors described above in the Commission's findings and analyses with respect to price effects, impact on the domestic industry, and causation render the Commission's ultimate conclusion unsupported by substantial evidence and otherwise not in accordance with law.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court (1) hold that the Commission's determinations in the subject investigations are unsupported by substantial evidence and otherwise not in accordance with law; (2) remand the investigations to the Commission for disposition consistent with any orders and opinions of this Court; and (3) provide such other relief as this Court deems proper.

Respectfully submitted,

/s/ Matthew R. Nicely
Matthew R. Nicely
Daniel M. Witkowski
Julia K. Eppard
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 K Street, N.W.
Washington, D.C. 20006
(202) 887-4000
mnicely@akingump.com

*Counsel to the Shrimp Committee of the Vietnam Association of Seafood Exporters and Producers*