UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| SHRIMP COMMITTEE OF THE VIETNAM ASSOCIATION OF SEAFOOD EXPORTERS AND PRODUCERS, | : : : : : |
| Plaintiff, | : : |
| v. | : Court No. 25-00032 |
| UNITED STATES, | : : |
| | : <u>Non-Confidential Document</u> : |
| Defendant, | : : |
| and | : : : |
| AD HOC SHRIMP TRADE ACTION COMMITTEE and AMERICAN SHRIMP PRODUCERS ASSOCIATION, | : : : : |
| Defendant-Intervenors. | : |

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS
RULE 56.2 MOTION FOR JUDGMENT
ON THE AGENCY RECORD

TABLE OF CONTENTS

INTRODUCTION...................................................................................1

ARGUMENT ........................................................................................3

I.   The Commission's Pricing Analysis Was Not Supported by
     Substantial Evidence or In Accordance with Law ...........................3
     A.   Defendant Waived Its Defense of the Commission's
          Unlawful Application of "Significant"....................................4
     B.   Defendant's Argument Regarding the Shift in Domestic
          Industry's Market Share Is Unavailing .................................5
     C.   Defendant Did Not Address Deficiencies in the
          Commission's Determinations Regarding the Timing of
          Underselling and Changes in the Domestic Industry's
          Performance........................................................................10

II.  The Commission Has Not Demonstrated That Its Impact
     Determination Is Supported by Substantial Evidence and
     Otherwise in Accordance with Law .................................................13

III. The Commission Has Not Demonstrated That the Domestic
     Industry's Performance is Properly Attributable to Subject
     Imports ..............................................................................................19
     A.   The Commission's Interchangeability Analysis
          Disregarded Questionnaire Responses .................................21
     B.   The Commission Ignored Purchasers' Testimony and
          Responses............................................................................22
     C.   The Commission Inappropriately Relied on Responses
          Regarding Country-of-Origin Preference ............................23
     D.   The Commission Failed to Explain its Reliance on
          Responses Regarding Product Standards.............................24

IV.  The Commission Has Not Demonstrated That It Collected the
     Information Required to Fulfill Its Statutory Requirements.........25

CONCLUSION.....................................................................................28

TABLE OF AUTHORITIES

<u>CASES</u>

*Ad Hoc Shrimp Trade Action Comm. v. United States,* 791 F. Supp. 2d 1327 (Ct. Int'l Trade 2011) ......................................................... 10, 20, 24

*Allegheny Ludlum Corp. v. United States*, 287 F.3d 1365 (Fed. Cir. 2002) ................................................................................................25

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991) ...........5

*Chr. Bjelland Seafoods A/S v. United States*, 19 CIT 35 (Ct. Int'l Trade 1995) ..................................................................................................17

*Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 20 (2020) ........................................................................................... 8

*Full Member Subgrp. of Am. Inst. of Steel Constr. v. United States,* 81 F.4th 1242 (Fed. Cir. 2023) ............................................................26, 27

*Gerald Metals, Inc. v. United States*, 132 F.3d 716 (Fed. Cir. 1997)...... 19

*LG Elecs., Inc. v. U.S. Int'l Trade Comm'n*, 26 F. Supp. 3d 1338 (Ct. Int'l Trade 2014)...................................................................................... 27

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). ........................5

*Mitsubishi Materials Corp. v. United States*, 820 F. Supp. 608 (Ct. Int'l Trade 1993)...................................................................................... 15

*Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ................................................................................ 13

*Neimenggu Fufeng Biotechs. Co. v. United States*, 741 F. Supp. 3d 1354 (Ct. Int'l Trade 2024)...................................................................... 5, 13

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003) 2, 19

*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006) .. 1, 2

*Timken U.S. Corp. v. United States*, 421 F.3d 1350 (Fed. Cir. 2005) ... 20, 21, 25

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) .......................... 1

*Usinor v. United States*, 26 CIT 767 (Ct. Int'l Trade 2002).................... 17

## *STATUTES*

19 U.S.C. § 1671d(b)(1)(A) ......................................................................... 17

19 U.S.C. § 1677(7)(C)(ii) ........................................................................... 4

19 U.S.C. § 1516a(b)(2)(A)(i) ..................................................................... 1

## *LEGISLATION*

S. Rep. No. 752, 70th Cong., 1st Sess. 28 (1945)........................................ 1

## GLOSSARY

POI.....................................................................Period of Investigation
Commission ................................... U.S. International Trade Commission

iii

## *INTRODUCTION*

Defendant has not demonstrated that the final determinations are supported by substantial evidence and in accordance with law.[1] Specifically, Defendant failed to respond to Plaintiff's arguments that the Commission committed legal errors in applying the statute, Pl. Br. 31-33, 44-46, and thus waived its defense to these claims. Moreover, Defendant has not demonstrated that the Commission considered the entire record in its final determinations. Rather, Defendant repeatedly asks the Court to defer to the Commission's deficient reasoning, raises *post hoc* rationalizations, and wrongly accuses Plaintiff of asking the Court to reweigh the evidence. *E.g.*, Def. Br. 44.

Indeed, the Court has an obligation under the substantial evidence standard "to determine . . . in the exercise of {its} independent judgment, whether on the whole record the evidence in a given instance is sufficiently substantial to support a finding . . ." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 484 n.17 (1951) (quoting S. Rep. No. 752, 79th Cong., 1st Sess. 28, at 30-31 (1945)); *accord Nippon Steel Corp. v. United*

---

[1] Defendant-Intervenors' arguments mirror those raised by Defendant. *See generally* Def. Int. Br. Our arguments below address the claims raised in both briefs.

*States*, 458 F.3d 1345, 1351–52 (Fed. Cir. 2006).  The Court "is not barred from setting aside {the Commission's} decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to {the Commission's} view." *Universal Camera*, 340 U.S. at 488.  Consistent with these principles, the Court must determine whether the Commission based its decisions on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (internal quotation marks and citation omitted).

As Plaintiff explained in its opening brief and confirms below, the Commission failed to address numerous aspects of the record that detract from its conclusions.  For example,

- U.S. processors' market share remained flat throughout the POI, declining by only 0.3 percentage points from 2021 through interim 2024;

- In a period of declining demand from 2021 to 2023, the domestic industry's gross profit, net income, capacity utilization, number

of production-related workers, hours worked, and wages paid declined by less than apparent U.S. consumption. When apparent U.S. consumption rebounded during the interim period, U.S. processors' sales increased by 34.1 percent and gross profit increased by 43.5 percent; and

- 97% of U.S. importers, 92% of U.S. retailer or restaurant purchasers, 69% of U.S. distributor or wholesaler purchasers, and 71% of U.S. food processor purchasers always or sometimes distinguished between wild-caught and farm-raised shrimp.

Had the Commission properly considered the record as a whole, no reasonable mind would have determined that an industry was materially injured by reason of subject imports. The Court should therefore remand the Commission's determinations for reconsideration.

## *ARGUMENT*

I.  *The Commission's Pricing Analysis Was Not Supported by Substantial Evidence or In Accordance with Law*

The Commission's pricing analysis was not in accordance with law because, in finding that changes in the domestic industry's market share were significant, the Commission impermissibly read the word "significant" out of the statute. Moreover, the Commission's pricing

3

analysis was unsupported by substantial evidence for three reasons, addressed below.

### A.   *Defendant Waived Its Defense of the Commission's Unlawful Application of "Significant"*

In its opening brief, Plaintiff explained that "the Commission impermissibly read the word 'significant' out of the statute" and effectively applied the statutory term in a manner inconsistent with the statute's plain language. Pl. Br. 31-33. For an affirmative determination, the statute requires the Commission to find "*significant* price underselling*"* and price depression or suppression "to a *significant* degree." 19 U.S.C. § 1677(7)(C)(ii) (emphasis added). However, no reasonable reading of the statute supports the Commission's finding that the effect of underselling on the domestic industry's market share was significant when that market share decreased by only 0.3 percentage points from 2021 to interim 2024. Pl. Br. 32-33.

While Defendant responded to Plaintiff's claims that the determinations were unsupported by substantial evidence, Defendant did not respond to Plaintiff's claim that the Commission unlawfully

applied the statute.[2]  Defendant therefore waived any defense to these legal claims.  *E.g., Neimenggu Fufeng Biotechs. Co. v. United States*, 741 F. Supp. 3d 1354, 1375-76 (Ct. Int'l Trade 2024) (holding that defendant waived its defense to certain findings by failing to respond to arguments raised in plaintiff's opening brief).

B.    *Defendant's Argument Regarding the Shift in Domestic Industry's Market Share Is Unavailing*

The Commission determined that underselling caused the domestic industry to lose significant market share.  *Opinion* 58, Appx1321.  The Commission supported its conclusion by comparing the market share for sales of domestic like product – which includes fresh shrimp that is never frozen – from 2021-2023, completely ignoring changes during the interim period.  *Id*.  Defendant argues that the Commission's approach was appropriate for two reasons.

---

[2] Defendant-Intervenors argue that "the question before this Court is not to determine the meaning of 'significant' in the context of the statute," but to only review the Commission's factual findings under the substantial evidence standard.  Def. Int. Br. 13-15.  However, the statutory term "significant" must be given meaning, consistent with the Court's obligation to "construe statutes, where possible, so as to avoid rendering superfluous any parts thereof." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991).  Moreover, it is precisely the role of this Court to "exercise independent judgment in determining the meaning of statutory provisions."  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024).  Thus, Defendant-Intervenors' argument is unavailing.

First, Defendant defends the Commission's inclusion of fresh shrimp that are never frozen in its market shift analysis. Def. Br. 49-51. Defendant argues that, because fresh shrimp are included in the domestic like product, the Commission appropriately analyzed changes to market share of the small share of shrimp that is sold fresh rather than being sold as processed shrimp. Def. Br. 49-51. Further, Defendant mistakenly alleges that Plaintiff challenged the inclusion of fresh shrimp in the domestic like product, an argument that was not raised with the Commission. Def. Br. 50; *Opinion* 15-16, Appx1277-1278.

Plaintiff does not challenge the Commission's definition of domestic like product; rather, the Commission's reasoning for defining the domestic like product supports Plaintiff's argument. In its semifinished product analysis, the Commission's determined that fresh and frozen shrimp are products that are merely "at different stages of the same production process." *Opinion* 22, Appx1284. While a small portion of fresh shrimp is sold without being frozen, "the overwhelming majority of fresh warmwater shrimp is not sold as a finished product." *Id.* Due to fundamental differences in channels of distribution, the small share of fresh shrimp that is not frozen does not compete directly with imported

frozen shrimp.  Pl. Br. 30-31.  Thus, the reason the Commission included fresh shrimp in the domestic like product is not because fresh shrimp is a comparable product that competes with subject imports, but rather because it represents an independent step in a single production chain that includes fresh shrimp produced by fishermen and frozen shrimp produced by processors.

In defending the Commission's approach, Defendant obfuscates the differences between fresh shrimp that is sold fresh versus frozen. Defendant points to the Commission's conclusion that subject imports caused U.S. processors to lower prices for fishermen, which in turn reduced fishermen's incentive to harvest fresh shrimp.  Def. Br. 51.  But that alleged impact would be captured only by the shift in market share for frozen shrimp (reflected in fresh shrimp transactions between fishermen and frozen shrimp processors), not fresh shrimp that is sold fresh to customers other than processors.  The Commission did not claim that other fresh shrimp customers were subject to similar market conditions.  Thus, for an apples-to-apples comparison, the Commission should have assessed the market share shift only for shrimp that is

ultimately sold frozen, and excluded the market share shift for shrimp that not sold frozen.

Second, Defendant defends the Commission's complete exclusion of the interim period from its market shift analysis because seasonality causes an imprecise comparison between partial-year and full-year data. Def. Br. 49-51. Defendant also claims that the Commission compared interim periods in its analysis, consistent with its practice. Def. Br. 48. First of all, Defendant's seasonality argument is an impermissible *post hoc* rationalization. The Commission's opinion did not explain that changes to U.S. market share during the interim period were excluded because of seasonality factors. The Court should therefore reject this argument. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 20, 23-24 (2020) ("judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action'" and "{a}n agency must defend its actions based on the reasons it gave when it acted," not "belated justifications.") (citations omitted).

On its merits, Defendant's seasonality argument is unworkable. Because of the Commission's failure to analyze seasonality, the impact of seasonality on market share shifts remains unclear. While some record

evidence indicates that shrimp harvesting is higher in summer months, "{s}everal hearing witnesses for petitioner testified that fishermen may be able to harvest shrimp all year long." *Opinion* 43, Appx1305. To the extent that fishermen reduce harvests during the winter months, as Defendant now claims, the domestic industry's market share in interim 2024 would actually be understated compared to a full year because interim 2024 captures only a low-harvest portion of the year. Thus, even if seasonality were a factor, U.S. processors' market share would not have declined by more than 0.3 percentage points.

Moreover, Defendant is incorrect in claiming that the Commission compared the market share shift from interim 2023 to interim 2024. Defendant's citations refer to the factual description of data in the Commission's impact section, not an analysis of how subject imports impacted the domestic industry. Def. Br. 48-49. The Commission's analysis did not include a single reference to the fact that U.S. producers' frozen shrimp market share increased from 5.0 to 6.5 percent from interim 2023 to interim 2024, reflecting a 34.1 percent increase in U.S. shipment volume of frozen shrimp. *Staff Report* C-3 to C-4, Appx1226-1227. The Commission's "fail{ure} to take into account record evidence

that fairly detracts from the weight of the evidence supporting its . . . determinations" warrants remand. *Ad Hoc Shrimp Trade Action Comm. v. United States,* 791 F. Supp. 2d 1327, 1334 (Ct. Int'l Trade 2011).

    C.    *Defendant Did Not Address Deficiencies in the Commission's Determinations Regarding the Timing of Underselling and Changes in the Domestic Industry's Performance*

The Commission's finding of significant price depression contains two fatal flaws. First, contrary to the Commission's findings, changes in U.S. prices were negatively correlated with changes in processors' market share. Pl. Br. 33-34. The *only* period in which the domestic industry lost market share was *when U.S. processors' and subject import prices increased* (i.e., 2021 to 2022). *Staff Report* C-3 to C-4, Appx1226-1227. Second, contrary to the Commission's findings, domestic processors *gained market share* during periods of import underselling. Pl. Br. 34-35.

Defendant responds to these arguments by repeating the Commission's flawed reasoning without adequately addressing the deficiencies raised by Plaintiff.

First, Defendant claims that the Commission's preferred definition of market share shows that underselling by subject imports caused U.S.

10

processors' market share to decline. Def. Br. 53. However, under any definition, U.S. processors' market share declined only when prices were increasing from 2021 to 2022, before increasing during price declines from 2022 through interim 2024. *Staff Report* C-3 to C-4, Appx1226-1227.

Second, Defendant quibbles with Plaintiff's characterization of improvements to the domestic industry's operating income from 2022 to interim 2024. Def. Br. 54. However, Defendant concedes that "U.S. processors' operating income worsened from $1.0 million in 2021 to operating losses of $4.2 million in 2022," as prices increased, but then improved substantially from "operating losses of $4.2 million in 2022" to operating losses of "$1.2 million in 2023" and "operating income was $546,000 in interim 2024." Def. Br. 54. Defendant concedes that U.S. fishermen's operating income also improved since 2022. Def. Br. 54. This steady upward trend in operating income even as prices declined demonstrates that underselling could not negatively affect the domestic industry, as the Commission claims.

Third, Defendant attempts to portray massive increases in capital expenditures from 2022 through interim 2024 as proof of price

depression.    Def. Br. 55.    Despite a 62.6 percent increase in U.S. processors' capital expenditures from 2022 to 2023 (during a period of declining demand) and a 14 percent increase from interim 2023 to interim 2024, Defendant claims that "subject imports had nevertheless hampered the industry's investment efforts."    Def. Br. 55.    However, Defendant concedes that the Commission did not evaluate the 2021 to 2022 period, when prices increased, separately from the 2022 to interim 2024 period, when prices decreased.    Def. Br. 55.    Indeed, none of Defendant's cited anecdotes specify that the delayed or canceled investments occurred while prices were declining.

Finally, Defendant claims that the domestic industry's improved market share and sales later in the POI are "fully consistent with domestic producers reducing their prices in an effort to compete for sales with low-priced subject imports."    Def. Br. 56.    Plaintiff acknowledges that market participants could theoretically increase sales by lowering prices, resulting in declining operational and financial performance.    But the Commission's explanation does not account for surging capital expenditures, improving operating income, and other improved financial

12

and operational indicators (*see* Pl. Br. 41-42) that outpaced U.S. apparent consumption.

Defendant's responses confirm that the Commission failed to articulate a "rational connection between the facts found and the choice made" in its pricing analysis. *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## II.  *The Commission Has Not Demonstrated That Its Impact Determination Is Supported by Substantial Evidence and Otherwise in Accordance with Law*

The Commission's determinations are not in accordance with law because, given economic conditions during the POI and the domestic industry's strong performance with respect to numerous performance indicators, no reasonable reading of the statute supports the Commission's finding that any injury to the domestic industry was "material." Pl. Br. 44-47. Again, like with the word "significant" discussed in Section I.A, Defendant did not respond to Plaintiff's claim that the Commission unlawfully applied the statute, thereby waiving its defense of these claims. *Neimenggu Fufeng Biotechs.*, 741 F. Supp. 3d at 1375-76.

Moreover, Commission's impact analysis is not supported by substantial evidence for two reasons. First, the Commission relied on cherry-picked data points, ignoring data covering the interim period and other data that did not support its conclusions. Pl. Br. 39-40. Second, the Commission did not adequately consider the impact of subject imports in the context of demand conditions, as required by statute. Pl. Br. 41-43. Defendant raised four arguments in defense of the final determinations, none of which are persuasive.

First, Defendant argues that the Commission properly considered impact in the context of demand conditions. Def. Br. 60-62. Defendant repeats the Commission's handpicked selection of indicators that underperformed demand, and claims that certain other indicators demonstrate significant negative impact on the domestic industry. Def. Br. 60-61. Defendant's response makes Plaintiff's point. Defendant claims that changes in processors' and fishermen's net income from 2021-2023 support an injury finding because "net income turn{ed} to net losses," but did not explain how the Commission considered those changes in the context of declining demand. While the Commission did not publish percent changes for net income, processors' and fishermen's

14

net income/sales ratios overperformed the 13.6 percent decline in apparent U.S. consumption from 2021-2023. *Staff Report* C-3, C-6, Appx1226, Appx1229. Further, Defendant does not address several indicators identified by Plaintiff that outpaced demand from 2021-2023 or that U.S. processors' sales and gross profit outpaced rising demand in the interim period. Pl. Br. 41-42. The Commission's failure to address these indicators in the context of conditions of competition demonstrates that the determinations are not supported by substantial evidence and that remand is warranted. *E.g.*, *Mitsubishi Materials Corp. v. United States*, 820 F. Supp. 608, 624 (Ct. Int'l Trade 1993) (the Commission "cannot simply ignore significant contradictory evidence and assert that, nevertheless, its determination was supported by substantial evidence.").

Second, Defendant claims that the Commission considered data trends during the interim period. Def. Br. 63-64. Defendant concedes that many indicators improved during interim 2024 compared to interim 2023, but argues that the Commission's findings were nonetheless supported by substantial evidence because a small number of indicators – namely, revenues and inventory – did not increase. Def. Br. 63-64. Defendant also points to the Commission's finding that there was no

15

correlation between U.S. prices and apparent U.S. consumption. Def. Br. 64.

Defendant's argument is flawed for several reasons. As explained in Section I.B, Defendant's citation to the Commission's "analysis" refers to the factual description of data in the Commission's impact section, but the Commission's analysis did not engage with these data trends. Moreover, the decline in inventory during the interim period reflects the surge in shipments by the U.S. industry combined with biologically limited supply. *Staff Report* C-3, Appx1226. Contrary to Defendant's argument, these data trends demonstrate the domestic industry's success in responding to rebounding demand. Further, Defendant's claim regarding correlation between U.S. prices and consumption cuts against the Commission's findings. As Plaintiff explained extensively, the domestic industry's performance is not correlated with price trends or the presence of underselling. Pl. Br. 33-36. If the Commission had considered the whole record, it would have evaluated the surge in the domestic industry's performance as demand rebounded and found that subject imports did not cause a significant negative impact on the domestic industry.

Third, Defendant erroneously claims that the Commission was not required to "give greater weight to the three months of interim 2024 data" because three months of data in interim 2024 is less than three years of data from 2021-2023. Def. Br. 62-63. However, the Commission was required to consider data trends during the whole POI, with an emphasis on the time period closest to the vote date. The statute requires the Commission to make a determination of present material injury. 19 U.S.C. § 1671d(b)(1)(A). "Although the entirety of the administrative record must be evaluated, a finding of 'present' injury must reference a time period which is as nearly contemporaneous to vote day as possible and for which reliable record evidence is available." *Chr. Bjelland Seafoods A/S v. United States*, 19 CIT 35, 43 (Ct. Int'l Trade 1995). The Commission's obligation to consider data trends near the vote date is consistent with the intent of law to "balance the future competitive environment between the domestic industry and various foreign importers." *Usinor v. United States*, 26 CIT 767, 779 (Ct. Int'l Trade 2002). The Commission's disregard for the interim period contravenes this Court's precedent.

Fourth, Defendant claims that "the Commission considered post-POI data on the record" and found that landing volumes increased, "cumulated subject import volumes declined{,} and domestic prices increased." Def. Br. 64-65. The Commission determined that the "domestic industry's improved pricing after Commerce's imposition of preliminary duties lends further support to our finding that low-priced subject imports caused the industry's declining performance during the POI." *Opinion* 77 n.290, Appx1339.

Defendant's strained interpretation of the data ignores context provided by the whole record. The record shows that the domestic industry responded positively to an uptick in demand during the interim period, as U.S. processors increased shipment quantity by 34.1 percent and gross profit increased by 43.5 percent from interim 2023 to interim 2024. *Staff Report* C-4 to C-5, Appx1227-1228. The record also shows that subject imports declined during each full year of the POI. *Staff Report* C-4, Appx1227. It is therefore not surprising that subject imports would continue to decline and the domestic industry would continue its surging performance immediately following the POI. The Commission's conclusory findings further highlight its failure to consider the record as

18

a whole, including whatever "fairly detracts" from the agency's determination. *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997).

Moreover, Defendant's claim that increased landings by U.S. fishermen in June and July 2024 demonstrate injury strains credulity when placed in the context of increased demand and reduced inventories in interim 2024. These data trends show that, in the months leading up to the Commission's vote date, including time periods before and after the imposition of provisional measures, U.S. processors' sales were so high that U.S. fishermen had to increase their output to keep up with the demand for their product. No reasonable mind would conclude that this record evidence supports the Commission's finding of significant negative impact. *Nippon*, 337 F.3d at 1379.

## III.   *The Commission Has Not Demonstrated That the Domestic Industry's Performance is Properly Attributable to Subject Imports*

The Commission improperly attributed changes in the domestic industry's performance to subject imports by making several unsupported findings regarding the interchangeability of wild-caught and farm-raised shrimp. Pl. Br. 47-59. First, the Commission's interchangeability analysis disregarded questionnaire responses by

purchasers and importers. Pl. Br. 50-52. Second, in concluding that purchasers and their customers are unaware of differences between wild-caught and farm-raised shrimp, the Commission ignored testimony and responses by purchasers. Pl. Br. 52-55. Third, in its interchangeability analysis, the Commission inappropriately relied on purchaser questionnaire responses regarding country-of-origin preference. Pl. Br. 55-56. Finally, the Commission failed to explain its reliance on questionnaire responses regarding product standards. Pl. Br. 57-58.

Defendant fails to engage with Plaintiff's arguments and, instead, simply repeats the Commission's deficient arguments and claims that Plaintiff asks the court to "reweigh the evidence." Def. Br. 76-86. To the contrary, Plaintiff is not asking the court to reweigh evidence. Rather, the Commission failed to incorporate critical evidence into its analysis or explain why that evidence was not relevant to its analysis. *Ad Hoc Shrimp,* 791 F. Supp. 2d at 1334. Defendant's arguments only serve to further highlight that the Commission failed to "examine the relevant data and articulate a . . . rational connection between the facts found and the choice made." *Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1355 (Fed. Cir. 2005).

A.    *The Commission's Interchangeability Analysis Disregarded Questionnaire Responses*

Defendant concedes that the Commission found wild-caught and farm-raised shrimp to be interchangeable even though "a majority of importers reported that wild-caught and farm-raised shrimp were never interchangeable" and "purchasers generally reported that wild-caught and farm-raised shrimp had limited interchangeability."  Def. Br. 80.  Further, Defendant does not defend the Commission's mischaracterization of purchaser responses in its analysis as showing "some" reports of "limited" interchangeability, when in fact the responses showed little to no interchangeability.

The Commission has not demonstrated that it "examine{d} the relevant data and articulate{d} a . . . rational connection between the facts found and the choice made."  *Timken U.S. Corp.*, 421 F.3d at 1355.  Questionnaire responses comprise a considerable share of relevant record evidence, and it is critical for the Commission to demonstrate that it reviewed and considered such evidence.  Here, questionnaire responses overwhelmingly demonstrate that wild-caught and farm-raised shrimp are not interchangeable (i.e., 97% of U.S. importers, 92% of U.S. retailer or restaurant purchasers, 69% of U.S. distributor or wholesaler

21

purchasers, and 71% of U.S. food processor purchasers always or sometimes distinguished between wild-caught and farm-raised shrimp). *See Staff Report* II-16, Appx1041. The Commission's mischaracterization of purchaser responses and failure to explain its apparent dismissal of its own findings regarding interchangeability indicates that it did not meaningfully engage with relevant data. Moreover, it is impossible to discern a rational connection between the overwhelming evidence that farm-raised and wild-caught shrimp are not interchangeable and the Commission's strained conclusion to the contrary.

B.    *The Commission Ignored Purchasers' Testimony and Responses*

Defendant concedes that the Commission did not explicitly address critical evidence by major retailers regarding interchangeability, but nonetheless asserts without support that the Commission must have considered the evidence in its determinations. The Commission determined that retailers "often do not know whether they have purchased wild-caught shrimp or farm-raised shrimp," *Opinion* 59, Appx1321, but did not include a single reference to testimony and questionnaire responses from three major retailers that purchase wild-caught and farm-raised shrimp as separate products. Pl. Br. 53-54.

22

Defendant argues that the Commission "clearly considered" this evidence, but does not explain how it did so while reaching a conclusion that contradicts the retailers' own words. Def. Br. 85.

### C. The Commission Inappropriately Relied on Responses Regarding Country-of-Origin Preference

Defendant defends the use of purchaser responses on country-of-origin preferences by claiming that purchasers with a preference for wild-caught shrimp would necessarily prefer U.S.-origin shrimp. However, in Defendant's scenario, the purchaser's decision would be based on production setting, not country of origin. Purchaser responses demonstrate that country-of-origin preference is not a proxy for production setting because a majority of purchasers indicated that farm-raised and wild-caught shrimp are not interchangeable, while many of those same purchasers expressed no preference for country of origin. *See Staff Report* II-13, II-16, Appx1038, Appx1041. Indeed, having no preference for country of origin among foreign sources of farm-raised shrimp, which are almost entirely imported, says nothing about the degree of competition between imported farm-raised and domestic wild-caught shrimp. The Commission's reliance on country-of-origin

23

preference data in purchaser responses thus only highlights its apparent disregard for interchangeability data in those same responses.

###### D.    *The Commission Failed to Explain its Reliance on Responses Regarding Product Standards*

Defendant's claim that "there is no evidence that purchasers compared wild-caught and farm-raised frozen shrimp using 'different standards'" is plainly incorrect.  Def. Br. 86.  Costco testified that, although it purchases both wild-caught and farm-raised shrimp, it does "not hold processors to the same standards that we have for farm-raised shrimp, otherwise we would not buy domestic wild-caught shrimp." Hearing Tr. at 152-153 (Statdfield), Appx58422-58423; Pl. Br. 57.  In other words, Costco sources wild-caught and farm-raised shrimp that meet standards for their respective product categories, but wild-caught shrimp would not meet the standards for farm-raised shrimp. Defendant's failure to identify this critical record evidence demonstrates that the Commission did not consider it.

The Commission's "fail{ure} to take into account record evidence," *Ad Hoc Shrimp*, 791 F. Supp. 2d at 1334, and articulate a "rational connection between the facts found and the choice made," *Timken*, 421 F.3d at 1355, demonstrates that remand is warranted.

24

IV.    *The Commission Has Not Demonstrated That It Collected the*
       *Information Required to Fulfill Its Statutory Requirements*

The Commission's unwillingness to adopt proposed revisions to draft questionnaires resulted in an inability to fulfill its statutory obligations, including by addressing the vast differences between imported shrimp and domestic shrimp. Pl. Br. 60-62. For example, by failing to adopt questions proposed by Vietnamese and Ecuadorian respondents, the Commission could not adequately assess the extent to which subject imports caused the alleged negative impact on the domestic industry. Pl. Br. 60.

Defendant concedes that the Commission was "obligated to make active, reasonable efforts to obtain relevant data." Def. Br. 104 (citing *Allegheny Ludlum Corp. v. United States*, 287 F.3d 1365, 1373 (Fed. Cir. 2002)). Nonetheless, Defendant claims that "the Commission conducted a thorough investigation and collected a voluminous record," citing large amounts of information placed on the record. Def. Br. 105. However, voluminous data collection alone does not satisfy the Commission's obligations; rather, the Commission must "collect data necessary to conduct its analysis under the statute." *Full Member Subgrp. of Am. Inst. of Steel Constr. v. United States,* 81 F.4th 1242, 1257 (Fed. Cir. 2023).

25

Based on the information that it collected, the Commission was unable to undertake its statutorily required assessment of the impact of subject imports on the domestic industry. The Commission apparently considered the purchaser questionnaire responses regarding interchangeability to be inadequate, and was forced to base its determination that U.S. purchasers view foreign and domestic merchandise as interchangeable on the testimony of U.S. processors and a single picture of a purportedly misleading package of frozen shrimp. *Opinion* 59-61. However, input by purchasers was necessary for the Commission's statutory analysis because they generally had experience with both domestic and imported shrimp, whereas processors did not. *Staff Report* II-19 to II-24, Appx1044-1049. By failing to collect additional information from purchasers regarding interchangeability, the Commission could not properly assess the degree of competition between subject imports and the domestic like product, an essential element in its statutory impact analysis.

Defendant misplaces support in two cases – *Full Member Subgroup* and *LG Electronics*. In *Full Member Subgroup*, the Federal Circuit explained that the Commission was required "to collect data necessary to

conduct its analysis under the statute," but was not required to collect additional evidence that "would not provide better clarity." *Full Member Subgrp.,* 81 F.4th at 1257. In *LG Electronics*, the CIT required the Commission to "collect the information that allows it to fulfill its statutory obligations." *LG Elecs., Inc. v. U.S. Int'l Trade Comm'n*, 26 F. Supp. 3d 1338, 1348 (Ct. Int'l Trade 2014). Here, the Commission was unable to conduct its statutory analysis without the proposed revisions to draft questionnaires. As explained above, the Commission effectively disregarded purchaser questionnaire responses in its determination that U.S. purchasers view foreign and domestic merchandise as interchangeable, and instead relied on the testimony of U.S. processors and a single picture of a purportedly misleading package of frozen shrimp. Pl. Br. 49-59. Unlike in *Full Member Subgroup* and *LG Electronics*, the proposed additions to purchaser questionnaires would have provided much-needed clarity to assist the Commission in fulfilling its statutory obligations by demonstrating the attenuated competition between the domestic like product and subject imports.

27

Therefore, the Commission's attribution of material injury to subject imports was unsupported by substantial evidence and otherwise not in accordance with law.

## *CONCLUSION*

We respectfully request that the Court grant Plaintiff's motion for judgment on the agency record and remand this matter to the Commission for disposition in a manner consistent with the judgment of this Court.

Respectfully submitted,

/s/ Matthew R. Nicely
Matthew R. Nicely
Daniel M. Witkowski
Julia K. Eppard
Paul S. Bettencourt
AKIN GUMP STRAUSS
HAUER & FELD LLP
2001 K Street, NW
Washington, DC 20006

Dated:  March 9, 2026

*Counsel to Shrimp Committee of the Vietnam Association of Seafood Exporters and Producers*

Certificate of Compliance

I, Matthew R. Nicely, an attorney with Akin Gump Strauss Hauer & Feld LLP, certify that Plaintiff's Reply Brief in Support of Its Rule 56.2 Motion for Judgment on the Agency Record contains 4,964 words (according to the word count feature of the Microsoft Word processing program) and therefore complies with the word count limitation set forth in Paragraph 2(B)(1)(a) of the Standard Chambers Procedures of the Court.

In addition, we certify that Plaintiff's Reply Brief in Support of Its Rule 56.2 Motion for Judgment on the Agency Record contains no unique words (including numbers) designated as confidential and therefore complies with paragraph 4 of Judge Baker's additional formatting requirements.

This brief was not prepared with the assistance of a generative artificial intelligence program.

Dated: March 9, 2026                    /s/ Matthew R. Nicely
                                        Matthew R. Nicely
                                        AKIN GUMP STRAUSS
                                        HAUER & FELD LLP

*Counsel to Shrimp Committee of
the Vietnam Association of
Seafood Exporters and Producers*